Brunn (Beau) W. Roysden III, No. 028698
**CULPER LAW, PLLC**
111 W. Marshall Ave.
Phoenix, AZ 85013
(602) 315-7545
beau@culper.law

Kate B. Sawyer, No. 034264
Katlyn J. Divis, No. 035583
**FUSION LAW, PLLC**
7600 N. 15th St., Suite 150
Phoenix, Arizona 85020
(480) 624-5648
kbs@fusion.law
kd@fusion.law

*Attorneys for Proposed Intervenor-Defendants*
*President Petersen and Speaker Montenegro*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Florence Immigrant & Refugee Rights Project, | No. CV-26-04831-PHX-MTL |
| Plaintiff, | **MOTION TO INTERVENE BY PRESIDENT PETERSEN AND SPEAKER MONTENEGRO** |
| v. | |
| Kris Mayes, et al., | |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 24, Proposed Intervenor-Defendants Warren Petersen, President of the Arizona Senate, and Steve Montenegro, Speaker of the Arizona House of Representatives (the "President" and "Speaker," respectively) move to intervene as defendants in this action[1] and request to be placed on the same briefing schedule as Defendants, including regarding the answer deadline.[2]

---

[1] Counsel for Defendant Attorney General Kris Mayes does not oppose the filing of this motion. Counsel for Plaintiff takes no position on the motion, pending review of the filed papers.

[2] *See Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 261, 268 n.1 (D. Ariz. 2020) ("Courts ... have approved intervention motions without a pleading where the court was

Arizona law recognizes that the President and Speaker have a unique interest in defending the constitutionality of laws duly enacted by the Arizona Legislature and gives them authority to intervene and file briefs in any case challenging the constitutionality of state laws. *See* A.R.S. § 12-1841. Additionally, the law being challenged here—a portion of House Concurrent Resolution ("HCR") 2060 or Proposition 314, also known as the "Secure the Border Act"—also provides an express right for the President and the Speaker "to file a lawsuit or intervene in any action concerning" the law if they seek to defend its "constitutionality, validity or enforceability." HCR 2060 § 7, Proposition 314, 55th Leg., (Ariz. 2024).

Because this motion is timely; because the President and Speaker have a significantly protectable interest in defending state laws that may be impaired if they are not granted intervention; and because it is not clear whether the President and Speaker's interest will be adequately represented by Attorney General Mayes, this Court should grant intervention as of right under Federal Rule of Civil Procedure 24(a). Indeed, even if Attorney General Mayes agrees to defend the law, she has stated she does not oppose intervention here and has previously expressed her opposition to HCR 2060. [3] Alternatively, for the same reasons, the Court should grant permissive intervention under Rule 24(b).

I.      **Facts and Procedural Background**

On June 4, 2024, the Arizona Legislature referred HCR 2060—the "Secure the Border Act"—to the Arizona voters to be considered in the 2024 general election.[4] On the November 5, 2024 general election ballot, HCR 2060 was labeled as Proposition 314.[5] On

---

otherwise apprised of the grounds for the motion." (quoting *Beckman Indus. Inc., v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992)).

[3] *See* Press Release, Kris Mayes, Attorney General State of Arizona, Attorney General Mayes Announces Opposition to HCR 2060 (May 9, 2024), https://www.azag.gov/press-release/attorney-general-mayes-announces-opposition-hcr-2060.

[4] *See* H.C.R. 2060, 56th Leg, 2d Reg. Sess. (Ariz. 2024).

[5] *See* Arizona 2024 General Election Publicity Pamphlet 312, https://apps.azsos.gov/election/BallotMeasures/2024/2024_AZGeneralElection_PublicityPamphlet_E.pdf.

November 25, 2024, Arizona Governor Katie Hobbs and Arizona Secretary of State Adrian Fontes certified the 2024 general election results and issued a proclamation declaring Prop. 314 to be the law after it was approved by over 62% of Arizona voters.[6] While portions of Prop. 314 took effect immediately, Section 5—which amended Arizona Revised Statutes Title 13, Chapter 38, by adding Article 35 ("Illegal Entry into this State")—had a delayed effective date. *See* A.R.S. § 13-4295.04.

On July 9, 2026, Plaintiff filed a complaint challenging the constitutionality of Section 5 (Doc. 1) and contemporaneously lodged a motion for temporary restraining order and preliminary injunction (Docs. 2, 12). On July 10, 2026, this Court (1) ordered that it would "not consider Plaintiff's request for a temporary restraining order until Plaintiff ha[d] completed service on the Attorney General, Speaker of the House, and the President of the Senate in accordance with A.R.S. § 12-1841"; (2) ordered Defendants to file their response briefs to Plaintiff's Motion for Temporary Restraining Order by July 17, 2026; and (3) and set a hearing on the same for July 24, 2026. (Docs. 9, 14).

Warren Petersen, as the President of the Arizona Senate, and Steve Montenegro, as the Speaker of the Arizona House of Representatives, now seek to intervene in this case in their official capacities, and on behalf of their respective legislative chambers, which together comprise the Fifty-Seventh Legislature of Arizona. Each chamber has passed rules authorizing its presiding officer to raise and defend "any claim or right arising out of any injury to the [chamber]'s powers or duties under the constitution or laws of this state."[7] Arizona State Senate Rule 2(N); Arizona House of Representatives Rule 4(K).[8]

---

[6] State of Arizona, Proclamation, General Election 2024, Proposition 314 (Nov. 25, 2024), https://apps.azsos.gov/election/2024/bm/Proclamation_for_Prop_314.pdf.

[7] *See* Ariz. Const. art. 4, pt. 2 § 8 (authorizing each house of the Legislature to "determine its own rules of procedure").

[8] Senate Rules 2025-2026, https://www.azsenate.gov/alispdfs/SenateRules2025-2026.pdf; Rules of the Arizona House of Representatives 2025-2026, https://www.azhouse.gov/alispdfs/AdoptedRulesofthe57thLegislature_ConformingChanges.pdf.

## II.    The Court Should Grant the President and Speaker Intervention as a Matter of Right

Pursuant to Federal Rule of Civil Procedure 24(a)(2), intervention as a matter of right is available to a party who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Ninth Circuit employs a four-factor test to analyze intervention of right: (1) "the motion must be timely; (2) the applicant must claim a significantly protectable interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (citation modified). The Ninth Circuit broadly construes these requirements because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* (citation modified). All of these factors favor the President and Speaker's intervention as of right.

First, this motion is timely because it was filed within days of Plaintiff filing the Complaint. Whether a motion to intervene is timely is based on "three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (citation modified). Courts have repeatedly recognized motions as timely when, as here, "intervention is sought 'at the outset of the litigation.'" *See Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 261, 266 (D. Ariz. 2020) (motion was timely when State sought to intervene within 48 hours of action's initiation); *see also Ctr. for Biological Diversity v. Jewell*, No. CV-15-00019, 2015 WL 13037064, at *2 (D. Ariz. Dec. 2, 2015) (motion was timely when "intervention was sought at early stage in the proceedings," before defendants had filed their answer and

before the court had made any substantive rulings); *Harris v. Arizona Indep. Redistricting Comm'n*, No. CV-12-00894, 2012 WL 12874289, at *2 (D. Ariz. June 7, 2012) ("no doubt" that motion was timely when it was filed "less than two weeks after the complaint was filed and two weeks before the named defendants responded to the complaint").

Second, the President and Speaker have a significant protectable interest in defending state laws. In the context of a legislative intervention case, the Supreme Court recognized that "[n]o one questions that States possess a legitimate interest in the continued enforcement of their own statutes" and that "[n]o one questions that States may organize themselves in a variety of ways." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 191 (2022) (citation modified). Such is the case here.

Under A.R.S. § 12-1841(A), "[i]n any proceeding in which a state statute … is alleged to be unconstitutional, the attorney general and the speaker of the house of representatives and the president of the senate shall be served with a copy of the pleading, motion or document … and shall be entitled to be heard." Further, in such a matter, A.R.S. § 12-1841(D) provides that the "attorney general, the speaker of the house of representatives or the president of the senate, in the party's discretion, may intervene as a party, may file briefs in the matter or may choose not to participate[.]" The Ninth Circuit has specifically recognized that § 12-1841(A) authorizes the President and the Speaker "to defend Arizona's state laws on behalf of the State" and that a "plain reading of the statute's literal terms shows that the Legislature intended to reserve to itself some authority to defend state law on behalf of the State and empowers the Legislative Parties here to defend Arizona's sovereign interests in federal court." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 707–08 (9th Cir. 2025) (citation modified), *cert. granted sub nom. Republican Nat. Comm. v. Mi Familia Vota*, No. 25-1017, 2026 WL 1855101 (U.S. June 29, 2026); *see also Doe v. Horne*, No. CV-23-00185, 2023 WL 3956618, at *2 (D. Ariz. June 12, 2023) (concluding that "the Legislators ha[d] a protectable interest in defending the constitutionality" of a state statute); *Isaacson v. Mays*, No. CV-21-01417, 2023 WL 2403519, at *2  (D. Ariz. Mar, 8, 2023) (concluding that § 12-1841 confers upon the

Arizona President and Speaker "a significantly protectable interest in the validity and enforcement of the challenged laws").

In addition to this statutorily recognized interest, section 7 of Prop. 314 provides that "[t]he president of the senate [and] the speaker of the house of representatives … shall be allowed to file a lawsuit or intervene in any action concerning [Prop. 314] if the individual seeks to defend the constitutionality, validity or enforceability of" Prop. 314. Therefore, in addition to the general authority conferred in § 12-1841, the people of Arizona also specifically granted authority to legislative leaders to defend HCR 2060.

Third, the President and Speaker's ability to protect their interest in defending state law would be impaired if they do not intervene here. After finding a significant protectable interest, the Ninth Circuit has had "little difficultly" concluding that as a practical matter, the disposition of a case may affect that interest. *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) (citing *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) ("We follow the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.' Fed. R. Civ. P. 24 advisory committee's notes.")). Further, because different officials may have "different interests and perspectives, all important to the administration of state government," the Supreme Court in *Berger* cautioned that "federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." 597 U.S. at 191.

Finally, existing defendants do not adequately represent the President and Speaker's interests, and the Attorney General does not oppose intervention. The Ninth Circuit has said that the burden of showing inadequate representation by an existing party is "minimal," and "satisfied if the applicant shows that representation of his interest *may* be inadequate." *Kalbers*, 22 F.4th at 828 (citation modified) (emphasis in original). That burden is easily satisfied here. As the Supreme Court has recognized, no one questions

that "when a State chooses to allocate authority among different officials who do not answer to one another, different interests and perspectives, all important to the administration of state government, may emerge." *Berger*, 597 U.S. at 191. Such is the case here.

The President and Speaker have a significant protectable interest in defending the constitutionality of Prop. 314, and they cannot be assured—for multiple reasons—that Attorney General Mayes, the main defendant in this matter, will adequately represent their interest. First, there is no guarantee that the Attorney General will fully defend the preemption arguments that Plaintiff asserts against Prop. 314. Also, the President and the Speaker have already intervened in other cases to defend state laws that the Attorney General did not defend. *See, e.g. Isaacson v. Mayes*, 84 F.4th 1089, 1094 (9th Cir. 2023) ("The Attorney General declined to defend this lawsuit, and the district court allowed Warren Petersen, President of the Arizona Senate, and Ben Toma, Speaker of the Arizona House of Representatives, to intervene.").

Second, while Prop. 314 was being debated in the Legislature as HCR 2060, before it was sent to the voters, Attorney General Mayes issued a press release announcing her opposition to HCR 2060. In her statement, she stated, in part, as follows:

> [F]urther straining law enforcement resources while implementing a measure that could very well lead to racial profiling is not the answer to creating safer communities, not to mention the havoc and harm it would do to our economy, as we saw fourteen years ago with the passage of SB 1070. This referral is a political distraction that will sow seeds of bias and fear without fixing the issues it claims to address.[9]

When she later defended against an initial challenge to Prop. 314, an article reported that a "press aide to Mayes, said the legal filing [defending against the lawsuit] should not be seen as an endorsement of the policies and provisions in Prop. 314."[10] So the President

---

[9] Press Release, Kris Mayes, Attorney General State of Arizona, Attorney General Mayes Announces Opposition to HCR 2060 (May 9, 2024), https://www.azag.gov/press-release/attorney-general-mayes-announces-opposition-hcr-2060.

[10] Howard Fischer, *AG joins GOP to stop legal challenge to immigration law* (June 18,

and the Speaker certainly cannot be assured that the Attorney General will fully adequately represent their interest here.

* * * * *

Because the President and Speaker have established that they satisfy all four factors for intervention as of right under Rule 24(a), the Court should grant this motion.

### III.    Alternatively, Permissive Intervention is Warranted

Even if this Court were to find that the President and Speaker are not entitled to intervene in this action as a matter of right, it should still permit the President and Speaker to intervene because they satisfy the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b). A "court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted). When determining whether to grant permissive intervention, courts examine many factors similar to those for intervention as a matter of right, including: "[T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case, ... whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

The Court should permit the President and Speaker to intervene in this action. As discussed above, this motion is timely. And common questions of law and fact abound, given that the President and Speaker are interested in defending the constitutionality of the

2025), https://azcapitoltimes.com/news/2025/06/18/ag-joins-gop-to-stop-legal-challenge-to-immigration-law/.

laws challenged. Accordingly, this Court should allow the President and Speaker to intervene here, if not as of right, then by permission.

## IV.    Conclusion

For the foregoing reasons, the President and Speaker respectfully request the Court (1) grant this Motion to Intervene and allow them to participate as Intervenor-Defendants to protect their unique interest in defending the challenged state laws; (2) waive Federal Rule of Civil Procedure 24(c)'s requirement to include "a pleading that sets out the claim or defense for which intervention is sought" and allow the President and Speaker to follow the normal pleading schedule for Defendants in this matter; and (3) allow the President and the Speaker to follow the current briefing schedule that the Court ordered for Defendants in its July 10, 2026 Order (Doc. 14).

RESPECTFULLY SUBMITTED this 13th day of July, 2026.

By: */s/ Brunn (Beau) W. Roysden III*
Brunn (Beau) W. Roysden III
**CULPER LAW, PLLC**
111 W. Marshall Ave.
Phoenix, AZ 85013
(602) 315-7545
beau@culper.law

Kate B. Sawyer, No. 034264
Katlyn J. Divis, No. 035583
**FUSION LAW, PLLC**
7600 N. 15th St., Suite 150
Phoenix, Arizona 85020
(480) 624-5648
kbs@fusion.law
kd@fusion.law